THE STATE ex rel. BEN C. HYDE, Superintendent of the Insurance Department of the State of Missouri, v. VICTOR H. FALKENHAINER, Judge of Circuit Court.

In Banc, July 3, 1925.

1. **INSURANCE: Insolvent Surety Company: Distribution of State Deposit: Before Contingent Claims Have Matured.** A corporation, organized to do a general surety business, was, in a proceeding instituted by the Superintendent of Insurance, adjudged to be insolvent and in a condition hazardous to the public and its policyholders, and the Superintendent was ordered to take charge of and

administer its assets. A commissioner was appointed to hear and decide claims, and the time for filing claims was limited to five years, and after the expiration of that time he filed his report, and judgment was entered thereon in favor of various creditors. The assets were sold, the preferred claims paid in full, and a dividend of fifteen per cent paid on the allowed claims of general creditors, and one of such general creditors filed a motion to compel the Superintendent to sell the securities legally deposited with him, as the statute requires, at the time the company, which still maintains its corporate existence, was organized, and out of the proceeds to pay the claims which have been filed, proven and allowed. There are outstanding 627 immature bonds with a penal sum aggregating over two million dollars, executed by the company prior to its insolvency, being bonds of executors, administrators and guardians and bonds guaranteeing the faithful performance of official duties and the full performance of contracts, and the liability of the company thereon is therefore purely contingent and may or may not become fixed within the period fixed by the Statute of Limitations. *Held*, that the court has jurisdiction to make an order directing a sale of the securities held by the Superintendent, and to distribute the proceeds to creditors having claims proved and allowed within the time fixed, and thereby to exclude from sharing in such proceeds contingent and possible claims which may arise on the outstanding bonds and policies.

2. ———: ———: ———: ———: Jurisdiction of Court of Equity. When a surety company is adjudged insolvent, the Superintendent of Insurance takes title to its properties and the right to distribute them among claimants only through the action of the court, and the fact that under the statutes he has possession of the securities deposited with him "in trust for the protection and security of its policyholders" does not deprive the court of its power over such fund or over its distribution. The proceeding being one in which a court of equity exercises its powers, the securities are under the control of the court, and the Superintendent, as a mere trustee, cannot sell and distribute them independently of the court, but the court has jurisdiction to fix a time for closing up the estate and to bar those contingent claims which have not been presented for allowance within the time limit.

3. ———: ———: ———: Power to Bar Contingent Claims. There being no contrary provision in the statutes, the circuit court does not exceed its jurisdiction in ordering sold the securities deposited with the Superintendent of the Insurance Department "in trust for the protection and security of the policyholders" of a surety company, which has been adjudged insolvent, or in ordering the proceeds of the sale to be distributed to those claim-

ants who have made proof of their claims within a reasonable time allowed by the court for proving up claims, or in declining to await the flux of time to determine whether the contingent liability upon outstanding contracts will thereafter ripen into valid claims.

4. ——: ——: ——: ——: **Proven and Contingent Demands: Time Limit: Jurisdiction: Prohibition.** If the claim against an insolvent surety company is provable, and not merely contingent, within the date for hearing claims, which should be a reasonable time before distribution, it should be allowed; but if purely contingent prior to such date it is not provable, and therefore is not allowable as a claim against the insolvent estate; and the court by ordering the net assets to be distributed *pro rata* among claimants who have proved their demands within a reasonable time fixed by order, thereby precluding purely contingent claims, which were not provable within the time fixed, from sharing in the distribution, does not exceed its jurisdiction, and therefore the writ of prohibition to prevent the court from making such orders is not available.

Corpus Juris-Cyc. References: Corporations, 14a C. J., Section 3268, p. 1012, n. 15 New, p. 1013, n. 26; Section 3274, p. 1017, n. 79. Insurance, 32 C. J., Section 98, p. 1038, n. 94, 7; Section 103, p. 1040, n. 58; Section 116, p. 1048, n. 47, 48; 48 New; Section 120, p. 1049, n. 79, 84 New; Section 121, p. 1050, n. 98, Section 122, p. 1050, n. 4, p. 1051, n. 7.

## Prohibition.

WRIT DISCHARGED.

*Jourdan & English, T. M. Pierce* and *Samuel H. Liberman* for relator.

(1) The assets deposited by a surety company with the Superintendent of the Insurance Department constitute a trust fund for the benefit of obligees on all bonds, irrespective of whether liability on such bonds has matured or been liquidated. R. S. 1919, sec. 6205; Relfe v. Ins. Co., 10 Mo. App. 150; Ry. Co. v. Surety Co., 291 Mo. 92. (2) While unliquidated or contingent claims may not be proven in an insolvency proceeding, such claims are not barred by the order of court limiting the time within which claims must be proven, for such order can have no greater effect than a Statute of Limitation.

34 Cyc. 341; R. S. 1919, sec. 6345; Abraham v. Mercantile Trust Co., 86 Md. 254; Pattberg v. Louis Pattberg & Bros., 55 N. J. Eq. 604; Tenney v. Lasley, 80 Mo. 664; Binz v. Hyatt, 200 Mo. 309. (3) Insolvency proceedings against a surety company in the circuit courts by the Superintendent of the Insurance Department do not vest in that court jurisdiction to order the sale of legally deposited reserves held as trust funds for the benefit of all policyholders. R. S. 1919, secs. 6205, 6345; Relfe v. Ins. Co., 10 Mo. App. 150; Cooke v. Warner, 56 Conn. 234; Ruggles v. Chapman, 59 N. Y. 163; In re Home Provident Assn., 129 N. Y. 288; 4 Joyce on Ins. (1 Ed.) sec. 3593.

*Fordyce, Holliday & White* and *Walter R. Mayne* for respondent; *Defrees, Buckingham & Eaton* and *Don Kenneth Jones* of counsel.

(1) Petitioner is not a trustee empowered to carry out an express trust independent of the courts. He is a mere custodian until such time as the court itself takes possession under its equity jurisdiction. Relfe v. Speer, 6 Mo. App. 129; Relfe v. Columbia Life Ins. Co., 11 Mo. App. 374; Gelpeke v. Railroad, 11 Wis. 454. (2) Petitioner, having invoked the jurisdiction of the court below, and seeking its aid in the marshaling of assets and settlement of claims, may not now maintain independence of the court as to a portion of the assets of the company. (3) The jurisdiction of the court below is *in rem* and its right to fix a time within which persons may present their claims and participate in the available assets of the insolvent company is absolute. The order fixing upon March 31, 1924, as the last day for exhibition of any claims for participation in the company's assets of whatever kind is valid, not reversed, and in full force and effect. People v. Met. Surety Co., 98 N. E. 412; Filene Sons Co. v. Weed, 245 U. S. 502; Penn Steel Co. v. New York City, 198 Fed. 721; People v. Comm. Life

Ins. Co., 154 N. Y. 95; People v. Globe Ins. Co., 91 N. Y. 174; People v. Security Life Ins. Co., 78 N. Y. 114. (4) Petitioner's construction of Section 6345 ignores related Sections 6355, 6357, 6366, R. S. 1919. All sections must be read in common, having in mind that knowledge is imputed to all persons dealing with a corporation that when insolvency occurs the law takes charge of its affairs, liquidates its debts, converts its assets and distributes the proceeds among its creditors. People v. Met. Surety Co., 98 N. E. 412. (5) Petitioner seeks to hold the securities in question away from the creditors for an indefinite period. He thus violates Sec. 6366, R. S. 1919, which peremptorily commands him to make final distribution of all assets and settle all affairs of the insolvent company "within the shortest time practicable."

GRAVES, C. J.—Original action in prohibition. Relator is the present Superintendent of the Insurance Department of Missouri, and succeeded in that office one, A. L. Harty. Respondent is a judge of the Circuit Court of the City of St. Louis, and at the dates covered by this action had jurisdiction over a certain proceeding instituted by A. L. Harty, as the then Superintendent of the Insurance Department of the State of Missouri, in July, 1919, against the Equitable Surety Company, being Case No. 25,929 of the Circuit Court of the City of St. Louis. The charge was that the said corporation was insolvent, and its financial condition such as to be hazardous to the public and its policyholders. The Surety Company filed answer, and according to the petition and return in the instant case, the court found the facts to be as charged and ordered that the said Harty take charge of the affairs of said Equitable Surety Company. Relator, Ben C. Hyde, succeeded Harty in office, and was substituted as plaintiff in such action, in the place of Harty. Hyde took charge of the assets of the corporation, and has administered upon the affairs of the corporation since October 31, 1921. The Surety Company was organized

under the laws of Missouri. Relator makes a fair statement of the present case, in this language:

"The Equitable Surety Company, organized under the provisions of what is now Section 6205, Revised Statutes 1919, to do a general surety-company business, was on July 12, 1919, declared insolvent and its assets and affairs taken over by the Insurance Department of this State, pursuant to Section 6349, Revised Statutes 1919, and the same are being administered in Division No. 1 of the Circuit Court of the City of St. Louis, Missouri. No decree dissolving the company has been entered, but the original decree declared that the capital of the company was impaired, and ordered the Superintendent of the Insurance Department to take charge. The company still maintains its corporate existence.

"Pursuant to Section 6357, Revised Statutes 1919, a commissioner was appointed to hear and decide claims against the company. The time for filing claims was limited, and after the expiration of the time the commissioner filed his report and judgment has been entered thereon in favor of various creditors, including one John A. McCormick, referred to in the record as intervener.

"Pursuant to order of the circuit court the general assets of the Equitable Surety Company have been sold and, out of the proceeds, the preferred claims have been paid in full and a dividend of fifteen per cent has been paid on all claims.

"In the hands of the Superintendent of the Insurance Department there remains only the fund deposited by the Surety Company upon its organization pursuant to the provisions of what is now Section 6205, Revised Statutes 1919.

"John A. McCormick, as a general creditor and intervener, filed his motion to compel the Superintendent of the Insurance Department, relator, to sell this legally deposited reserve, in order to pay the claims of the company which have been filed, proven and allowed, and upon which judgment has been entered by the circuit court

confirming the report of the commissioner appointed for that purpose.

"There are outstanding and uncanceled six hundred and twenty-seven bonds, with a penal sum aggregating over $2,000,000, executed by the company prior to its insolvency, being bonds of executors, administrators and guardians, and bonds guaranteeing the faithful performance of duty and the full performance of contracts. The liability on each of these bonds is obviously contingent, and there may and may not have accrued liability on the same within the time allowed by the circuit court for the filing of claims against the estate of the insolvent Equitable Surety Company. On none of these bonds have claims been filed.

"The intervener, John A. McCormick, filed his motion in Division No. 1 of the Circuit Court of the City of St. Louis, in which the insolvency proceedings are pending, seeking to compel the Superintendent of the Insurance Department, relator, to sell the legally deposited reserve of the Equitable Surety Company. Relator filed a return challenging the jurisdiction of respondent judge to order the sale of these reserve funds, and respondent, as the judge presiding in said division, has overruled a demurrer of intervener to said return, and has indicated that he will order relator to sell the said securities deposited pursuant to Section 6205, Revised Statutes 1919, and respondent has further indicated that he will order the same when sold to be distributed among those creditors who have heretofore filed and proven their claims in the said insolvency proceedings.

"Should the order be made as indicated relator has admitted that the sale of such securities would produce funds sufficient in the amount to pay in full all claims heretofore filed and proven against the Equitable Surety Company. Relator contends, however, that the Circuit Court of the City of St. Louis, Missouri, has no jurisdiction in the insolvency proceedings to order the funds held by relator as the legal reserve of the Equitable Surety Company to be sold, for the reason that the said

funds so deposited pursuant to Section 6205, Revised Statutes 1919, are a trust fund for the benefit not only of those creditors and obligees on bonds who have proven their claims, but for the benefit of all who have or may have claims against the company which, at this time, are unliquidated or contingent, and relator fears that should such order be actually entered and should he comply with such order he will become liable on his official bond to any policyholder or obligee on a bond executed by the Equitable Surety Company whose demand may accrue or become liquidated hereafter.''

The issues are duly made up here by relator's petition, respondent's return, and relator's motion for judgment on the pleadings. There are no controversies about the facts, as we gather them from all the pleadings. The relator has sold all of the general property of the corporation, and with the proceeds has paid all the preferred claims, and fifteen per cent of the general claims allowed by the court. Wheeler Collier, Drainage Commissioner of the State of Oklahoma, is a general creditor (by way of judgment against the Surety Company) for some $38,000, and by leave of court was allowed to file brief herein. On the state of the pleadings the facts (if any are controverted) will have to be gathered from respondent's return. This is a general outline of the case. The questions involved are interesting, but their determination is a matter that is of no interest to relator, Hyde, further than our judgment, whichever way it goes, would be a protection to him and his bondsmen. As we take it from the briefs he has no personal desire to hold the sureties and funds in his hands, if he can legally distribute them, as the circuit court desires them distributed.

I. It should be stated that the circuit court kept the time for filing claims open from 1919 to 1924, a period of five years. It also stands admitted that the Surety Company was on 627 bonds upon which no claims were filed within the time given by order of court to file same,

These bonds carried a contingent liability of over $2,000,-
000, but there was made no proof of actual liability
thereon up to the time claims were barred by order of
the trial court. The only property now left is some se-
curities of the face value of $275,000, but in actual value
somewhat less. It stands admitted, however, that if
the court has the right and power to order these securi-
ties sold and the proceeds applied to the remaining al-
lowed claims there would be sufficient to pay them in
full, and to pay the administration costs. These facts,
however, add but little to the real questions at issue in
the case. The contentions of relator are three in num-
ber, stated in the brief, as follows:

"1. The assets deposited by a surety company with
the Superintendent of the Insurance Department con-
stitute a trust fund for the benefit of obligees on all bonds,
irrespective of whether liability on such bonds has ma-
tured or been liquidated.

"2. While unliquidated or contingent claims may
not be proven in an insolvency proceeding, such claims
are not barred by the order of court limiting the time
within which claims must be proven, for such order can
have no greater effect than a Statute of Limitation.

"3. Insolvency proceedings against a surety com-
pany in the circuit courts of Missouri by the Superin-
tendent of the Insurance Department does not vest in
that court jurisdiction to order the sale of legally de-
posited reserves held as trust funds for the benefit of
all policyholders."

Respondent's brief thus outlines the contentions of
relators:

"Petitioner then applied here for a writ of prohibi-
tion against the entry of an order to that effect and here
contends:

"First. That the deposit is a trust fund over which
the courts have no control whatever.

"Second. That notwithstanding the order giving
claimants more than five years to file their claims and
barring any subsequent claims from participation, the

securities must be held indefinitely in case any future claims should ever develop and be presented.

"Respondent contends that the securities do not constitute a trust fund, but if it should be held that such securities are impressed with a trust that, nevertheless, the trust should be terminated in accordance with the statutes; that the court has undoubted jurisdiction to bar future claims and compel the liquidation and settlement of the company's affairs without further delay and expense of administration."

The questions are the same, but somewhat differently worded. Of such questions in the following paragraphs.

II.  The jurisdiction of the circuit court to make an order directing the sale of the securities held by the Superintendent of the Insurance Department, at this time, and to distribute the proceeds, at this time, to the parties having approved and allowed claims, and thus excluding contingent and possible claims growing out of 627 outstanding bonds or policies, is we think the substantial question in this case. The general jurisdiction of the court over the corporation and its general assets cannot well be questioned, either under the statutes, or the general equity powers of the court. Relator's predecessor sought the jurisdiction of the court by filing his petition therein, and the relator stands in his shoes. But we do not understand relator to go further than to say that the court is exceeding its rightful jurisdiction, in ordering the sale and distribution of the securities placed with the State, as security for all of its policy or contract-holders at this time, and before all the obligations of the corporation have run the gauntlet of time, and the exact rights of all are thereby determined.

The petition is broad enough to challenge the right of the court to take over these securities, because they constitute a trust fund for a special purpose, and that relator is the trustee of such special trust, and therefore

should administer the same according to contract, and
under the statutes, rather than under the directions of the
court.   In the brief such contention is made by the relator's learned counsel.

The questions are new and interesting ones so far
as the rulings of this court go.   It is one of vital importance to the State department over which relator presides, and one which (owing to its effect upon this department) deserves careful consideration.   The situation
was such that relator was fully justified in invoking a
decision of the matter.   And this, not only for his own
protection, but for the greater reason that the rule of
law should be settled now and for all time to come.   In
this spirit we shall undertake the discussion of all the
pertinent questions.   Under the facts pleaded, it must not
be overlooked, that the parties asking for the sale and
the distribution of the only fund left (the alleged trust
fund for contract-holders) are themselves contract holders, with their rights under their contracts adjudicated,
either in the present proceeding, or in previous court
actions.   So that the case left is one involving contract
holders or beneficiaries of such contracts.   No general
creditors, as we gather the record, are involved.

III.   A short outline of the statutes involved is proper at this juncture.   Section 6205, Revised Statutes 1919,
requires a deposit of securities to be made with the Superintendent of the Insurance Department by an insurance or surety company in a stated sum, before
a license to do business can be issued.   This
deposit to be, in the language of this section, "in trust
for the protection and security of its policyholders."

The securities sought to be reached in this case were
deposited under the terms of this statute, and other sections directly connected therewith, pertaining more particularly to the winding up of such corporations under
given contingencies. Section 6349, Revised Statutes 1919,
authorizes the Superintendent of the Insurance Department whenever he concludes from an examination "that
[among other things] such company is insolvent" to

institute proceedings in the circuit court "to enjoin said company from further prosecution of its business, either temporarily or perpetually, or for such injunction and dissolution of said company, and the settlement and winding up of its affairs, or for any or all of said remedies combined, or for such other decrees and relief as, under the provisions of this law, the court shall deem advisable."

The return of the respondent herein sets out the return or answer of the relator to the intervening petitioner. There it is admitted that relator's predecessor brought suit in the Circuit Court of the City of St. Louis, and after answer filed and hearing therein "that thereupon a finding and decree was entered in this cause that defendant (Equitable Surety Company) was insolvent and that the Superintendent of Insurance take charge of the affairs of the defendant company." So that we have in the record an admitted judgment of insolvency, and the placing by the court (not by the Superintendent *sua sponte,* or by the statutes) of the assets of the insolvent, in the hands of the Superintendent. This relator says his predecessor asked, and this he says was done, and further that he succeeded Harty as the party (complainant) to the action.

Section 6353 provides for the hearing of the case, and the judgment. Section 6350 provides for the contents of the petition. Other sections provide for the process and the return of process. Section 6355 is important, and reads:

"Upon the rendition of a final judgment dissolving a company, or declaring it insolvent, all the assets of such company shall vest in fee simple and absolutely in the Superintendent of the Insurance Department of this State, and his successor or successors in office, who shall hold and dispose of the same for the use and benefit of the creditors and policyholders of such company and such other persons as may be interested in such assets."

This section would indicate that it took more than the power given by Section 6205, to vest the right of

property and the right of distribution in the Superintendent of Insurance. It required (as here indicated) court action. Construing all the sections together, it /will hardly do to say that these deposits, under the statutes, are beyond court control. So much for the statutes so far outlined. But even on the theory that there is a specific trust fund, such a fund is not beyond a court of equity.

By Section 6356, "upon the rendition of the judgment aforesaid," the Superintendent of Insurance shall take possession of the assets. By Section 6357 the court, *not the Superintendent,* "shall limit and may extend the time for presentations of claims" and claimants not presenting their claims within the time limit fixed, or later extended, such claimants are debarred from participating in the distribution of assets. By Section 6359, the distribution of assets in the insolvent companies to which such section applies, is "under the direction of said court" and not at the will of the Superintendent.

Relator, however, urges specifically, Section 6345, Revised Statutes 1919, the part more particularly applicable being as follows:

"Whenever any company has been or shall be adjudged insolvent, or shall be or has been dissolved, if a distribution of its assets among its policyholders and creditors is or shall be decreed, it shall be the duty of the Superintendent of the Insurance Department to hold all securities on deposit for the benefit of all policyholders in such company, whether the claims of such policyholders are in judgment or not, to reduce such securities to money, and when so reduced, to apply the same, less the expenses herein provided for, to the liquidation of policy claims *pro rata.*"

This section, like all the others we have mentioned, contemplates a court proceeding. It seems to contemplate that the securities deposited shall be used for the benefit of all the policyholders, and creditors whether the claims have been reduced to judgment or not. It differs from Section 6205, in that we have introduced

herein creditors as well as policyholders. But even this would not totally destroy the idea that the securities deposited should go to policyholders exclusively. Such surety company has general property as well as its interest in those special deposits. The mention made by creditors in this section is only in this language "if distribution of its assets among its policyholders *and creditors* is or shall be decreed," and then follows language indicating that all securities on deposit shall be for the benefit of policyholders. This seems to have been done in this case, and what is called preferred claims have been fully paid out of the general assets, and there being more than necessary for the purpose, a payment has been made to general creditors, which covered these policyholders. As said, the contest here is really between those holders of contracts which have come into court, within the time limit, and proved their claims, and the Superintendent of Insurance, who is contending for the undetermined and contingent rights of the obligees in the 627 outstanding contracts.

From a reading of all the statutes, we are impressed with the idea that the Superintendent takes title to the property and the right to distribute only through a court action. Simply because under the law he has the possession of the securities for a particular class of creditors, does not deprive the court of its power over the fund, nor over its distribution. Reduced to its last analysis the single question is whether or not the court can, in the course of this equitable proceeding, fix a time for closing up the estate, and bar those contingent claims which have not been presented within this time limit. Or must, as relator claims, the fund be held until all contracts and liabilities thereunder have been determined by lapse of time or otherwise. That question we take next, but we now rule that these securities are under the control of the court in this court proceeding, and not in the hands of the Superintendent as a mere trustee for all contract-holders. In other words, relator is not independent of the court, and the court was not exceeding its

jurisdiction, under the law, when it, in effect, ruled that relator could not hold and distribute these particular assets independent of the court. The court was not without jurisdiction over this property herein involved.

IV. The force and effect of what we have ruled, supra, is (1) that while the Superintendent is a custodian of deposits of securities, he acquires no title thereto, and no right to distribute without court action, (2) that while these assets may be impressed with a trust, in that they must be paid to contract-holders (5 Joyce on Insurance (2 Ed.) sec. 3593) until such are satisfied, yet the administration of the estate (as a whole) requires court action, (3) that independent of court decree the Superintendent of Insurance has no power to sell and distribute, and (4) that while that portion of the petition which alleges that the Superintendent (under the law) is vested with the rights hereinabove ascribed to the court, is a sufficient challenge to the jurisdiction of the court to invoke the writ of prohibition, yet such writ should be denied upon a fair construction of the statutory scheme.

The statute provides that these cases shall be heard by the court, without a jury, thus recognizing an equitable jurisdiction in the court. With these matters determined, we reach the other question.

Did the court exceed its jurisdiction in ordering the property sold, and the proceeds distributed to those claimants who had made proof of their claims during the five years time allowed by the court to make such proof, and in not awaiting the flux of time to determine whether or not the contingent liabilities upon the 627 outstanding contracts might bear fruit, and ripen into claims against the fund now for distribution, under the court's order, or threatened order. If the law contemplates such lengthened time for the closing of the insolvent's estate, then it might be said that the court was in excess of its lawful jurisdiction in now ordering the sale and distribution. It is a close question as to whether it would be mere error, or an act in excess of jurisdiction. Of course,

if the law specifically said that no final distribution should be made until all contingencies of contract-holders had been determined by the lapse of time, and the order was made for distribution at this time, the act would be in excess of jurisdiction or power. Relator claims that such is the law, but in this we do not concur. As we read these statutes, the Superintendent of Insurance is nothing more than a receiver for a court of equity, and his conduct is governed by equitable rules, having of course due regard for the statutes.

The fact that the court should appoint the Superintendent of Insurance to take charge of the assets does not change the situation that he is a receiver of the court, and under the court's control. But to the real issue. Was the court within its lawful rights in limiting the time for proving claims, and in excluding contingent claims which were not presented? We think so. There is a diversity in the rulings as to when the claims in fact must exist, in order to have them proved. Some cases hold that the claim must have been stripped of all contingencies, and subject to proof of specific liability when the insolvency is declared. [People v. Metropolitan Surety Co., 98 N. E. (N. Y. Court of Appeals) 412; Boston & A. Railroad Co. v. Mercantile Trust Co. (note and cases cited), 38 L. R. A. 1. c. 100, and cases cited.]

Other cases hold that if the claim becomes provable at any time before the order of distribution it is sufficient. By becoming "provable" we mean stripped of all contingencies. Contingent liabilities are not allowable in insolvent estates. [William Filene's Sons Company v. Weed, 245 U. S. 597; Pennsylvania Steel Co. v. New York City Ry. Co., 198 Fed. 1. c. 738-9.]

The reasonable rule seems to be that if the claim is provable (not merely contingent) then if proven within the date fixed for concluding the hearing of claims (which date should be a reasonable time before distribution) then the claim should be allowed. Claims which are purely contingent at such date are not provable or allow-

able.  [Pennsylvania Steele Co. v. Ry. Co., supra, 198 Fed. 1. c. 739-740.]

Courts of equity have the power to fix the time for proving up claims, and the further power to debar from the distribution claims not proven within that time. [Abraham v. Trust Co., 86 Md. 254, and cases cited.] This is a general rule in equity, although some hardships may follow.

Even in the case of the 627 contracts, many of them no doubt had coming to the obligees unearned premiums at the date of the decree of insolvency.  Insolvency precluded the Surety Company from making good its contracts, and premiums paid, but unearned at that date, constituted valid claims against the insolvent estate, but these were not proven, and of course are barred.

Upon the whole, we are of opinion that our preliminary rule in prohibition should be discharged, and it is so ordered.  All concur.