Lillian M. SOMMERS, Plaintiff-Respondent,

v.

Victor HERGENRETER et al., Defendants,
and
Christopher Harris, Receiver-Respondent,
and
C. L. Paxson et al., Claimants-Appellants.

No. KCD 26981.

Missouri Court of Appeals,
Kansas City District.

May 5, 1975.

Wendell E. Koerner, Jr., Brown, Douglas & Brown, St. Joseph, for claimants-appellants.

Don B. Sommers, Sommers & Holloran, St. Louis, for plaintiff-respondent.

James H. Counts, Morton, Reed & Counts, St. Joseph, for receiver-respondent.

Before SWOFFORD, P. J., and WELBORN and HIGGINS, Special Judges.

ANDREW JACKSON HIGGINS, Special Judge.

Action in equity under Chapter 351, RSMo 1969, V.A.M.S., for liquidation of corporation in which proof of claim of Paxson & Richel was denied without a hearing on its merits.

In Count I of her petition, plaintiff Lillian M. Sommers alleged: that she was a judgment creditor of individual defendants Hergenreter and Newhart in an amount in excess of $124,000; that such defendants were stockholders and statutory trustees of defendant N–H–N Grain Corporation a/k/a N–H–N Farm Center, Inc., which had forfeited its charter; that individual defendants had sold or intended to sell the assets of the corporation and, after satisfaction of creditors, there would be an excess of funds in their hands of which they would be beneficiaries and which would be subject to attachment in satisfaction of plaintiff's judgment. Plaintiff prayed for an accounting of corporate assets, a temporary order restraining individual defendants from dissipating such assets, an attachment of such assets, and an order for payment of excess funds to her in satisfaction of her judgment.

In Count II plaintiff alleged she was a minority stockholder of defendant corporation and that individual defendants were in the process of disposing of corporate assets without authority and converting funds from liquidation of such assets to their own use. Plaintiff prayed for appointment of a receiver and for an order for individual defendants to account for corporate assets to such receiver.

On December 9, 1971, the court, after hearing, found that the appointment of a receiver was necessary; that individual defendants should be restrained from transferring any assets of defendant corporation, and ordered to place all assets and records of the corporation with a receiver.

On December 15, 1971, Christopher Harris was appointed receiver. He was subsequently authorized to sell assets of defendant corporation, and such sale was effected by the receiver and confirmed by the court.

On October 19, 1972, receiver requested the court to enter an order requiring credi-

tors of defendant corporation to file proof of claims in accordance with Section 351.-500, RSMo 1969, V.A.M.S. Such request was sustained, and the court ordered that all creditors file verified proof of their claims with the Clerk of the Circuit Court of Andrew County, with copies to receiver, on or before February 28, 1973; that receiver gave notice of the order by regular mail to all creditors within his knowledge; that all creditors who fail to file such proof on or before February 28, 1973, be barred from filing any claims against defendant corporation's assets, and that notice of the order be given also by publication in a proper newspaper of general circulation.

On October 23, 1972, the required notice was mailed on behalf of receiver by his attorney. Among the parties so notified was "C. L. Paxson, Paxson & Richel, American Home and Life Building, 400 Kansas Avenue, Topeka, Kansas 66603." Attached to the notice was a copy of the court's order requiring the filing of proofs of claims. The receiver also advised that he would call all such proofs of claims for hearing on March 21, 1973. The notice was duly received by Paxson & Richel.

On February 1, 1973, Don Paxson, as a partner and on behalf of Paxson & Richel, Certified Public Accountants, filed on his oath "Proof of Claim in Receivership," alleging defendant corporation was indebted to his firm for accounting services in sum $3,648.85.

On March 21, 1973, the court, of its own motion, continued the hearing on proofs of claims from March 21, 1973, to April 24, 1973.

On March 26, 1973, a notice was mailed on behalf of receiver by his attorney to all recipients of his notice of October 23, 1972. Attached to the notice was a copy of the court's "Order Continuing Hearing on Claims." The receiver again advised that he would call previously filed proofs of claims for hearing on April 24, 1973.

On April 24, 1973, plaintiff appeared by her attorney, receiver appeared in person and by attorney, and Mr. and Mrs. Hinderks appeared in person on behalf of claimant Flury-Hinderks Insurance Agency, Inc.

Evidence was heard on the claim of Flury-Hinderks after which the following happened:

"MR. COUNTS [attorney for receiver]: * * * There is the further * * * claim of Paxson and Richel * * * filed pursuant to this Court's order.

"MR. SOMMERS [attorney for plaintiff]: I would object to consideration of that particular claim * * * because there is nothing to support it here.

"THE COURT: Who are Paxson and Richel?

"MR. COUNTS: Paxson and Richel are a co-partnership, an accounting firm in Topeka, Kansas, according to the information contained in the claim filed pursuant to this Court's order. The total amount of the claim is $3,648.85. No proof has been offered on this claim by any person, and, on behalf of the Receiver * * * we are objecting to this claim and request that same be denied because of failure of any evidence whatsoever to prove either the merits or the validity of said claim.

"THE COURT: * * * were these people notified?

"MR. COUNTS: They were, Your Honor, by me personally. * * *

"THE COURT: That concludes the matter of the Paxson-Richel claim * * *. Let the record show that the claim of Don Paxson, a partner in the certified public accounting firm of Paxson and Richel, filed in this case in the amount of $3,648.85, is disallowed by the Court for the reason that they have been notified as to two dates when proceedings would be taken up in this case, and the Court has not heard from anyone on their behalf."

On June 1, 1973, a notice which was filed June 4, 1973, was mailed on behalf of receiver by his attorney to all recipients of his prior notices which advised that on June 16, 1973, receiver would present to the court his final accounting as receiver, request for approval and discharge, and petition for receiver's and attorneys' fees.

Prior to June 15, 1973, plaintiff caused summons to garnishee to be served on the receiver attaching and levying upon all debts owed by him to individual defendants Hergenreter and Newhart.

On June 15, 1973, receiver appeared in person and by attorney, and Sam Sommers appeared as an interested party on behalf of his mother, the plaintiff, and his brother, her attorney. Counsel for receiver advised the court that he had heard from three persons in connection with proceedings to be held, one of whom was John Newhart who had originally appeared in his own right and as attorney for the corporate defendant. "Mr. Newhart inquired of me why at the last hearing * * * the claim of Paxson and Richel * * * had not been allowed. I explained no proof on that claim had been offered and therefore the claim was denied. Mr. Newhart expressed his dissatisfaction as to that portion of the prior proceeding and stated he would so object. * * *

"THE COURT: Regardless of what Mr. Newhart's feelings are, I have never heard what they did to earn the money, and I don't see how a Court can make an allowance if it doesn't know that the people have done something to justify the allowance. This has been done, I think my order was correct, and I don't intend to do anything about it. * * * Mr. Counts, in what shape was the Paxson claim called to the Court's attention? Did they send in some statement that they wanted some money?

"MR. COUNTS: They filed a claim in this Court, and we gave due notice of the date all claims in this matter would be called up for hearing. The matters were called up for hearing before this Court in open session, with Mr. Don Sommers present, counsel for plaintiff, myself present, Mr. Harris present and Mr. Sam Sommers present. We called the claim of Paxson and Richel. No persons appeared on their behalf to prove up their claim. No evidence having been offered, the claim was denied by this Court."

The court then considered receiver's request for authority and granted the request except for an order assessing costs and an order for disbursement of funds remaining in receiver's hands amounting to $12,267.-23.

On June 19, 1973, receiver filed "Request to Disburse Proceeds and for Discharge of Receiver," having given notice on June 18, 1973, of such request, to all creditors advising them of the court's action of June 15, 1973, and that the request would be called before the court on June 27, 1973.

On June 29, 1973, claimant Paxson & Richel, now with assistance of counsel, moved the court to set aside its previous orders of April 24, 1973, disallowing the claim, and of June 15, 1973, approving receiver's final settlement showing no payment of its claim. Claimant asserted, in support of the motion, that "At no time were movants informed that further proof of claim would be necessary. At no time did movants receive written objections to their claim, nor were they at any time informed of any objection thereto of any kind or character. Movants were unaware that the Court would require them to appear and offer evidence in support of their claim, nor were they at any time so informed. By letter from Attorney John Newhart, a shareholder and director of NHN Grain Farm Center, Inc. and by telephone conferences with Mr. Newhart, they were led to believe that their claim was considered to be valid and would be honored. Furthermore, the Court and counsel for the receiver received copies of said let-

ter and were, therefore, informed that said claim was meritorious.

"In further support of their motion, movants state to the Court that they were not notified by the Court or counsel until the 27th day of June, 1973, that any order had been entered by the Court relating to their said claim against NHN Grain Farm Center, Inc., and that such information was acquired by a telephone call to the Court. Had they been aware that an order had been entered by the Court on the 24th day of April, 1973, relating to their said claim, they would have immediately filed a motion to set aside such order and are filing this motion as soon as practicable after obtaining knowledge of the Court's order of April 24, 1973.

"Movants further state that their claim is for fees for professional accounting and auditing services provided NHN Grain Farm Center, Inc., that all of the services listed in said claim filed with the Court were performed, and that the charges for said services were fair and reasonable.

" * * * that the receiver's accounting filed with the Court shows that there are cash assets remaining in his hands well in excess of movant's claim, which assets should be made available to pay all just debts of NHN Grain Farm Center, Inc., before distribution to the shareholders. This being an action in equity, movants are entitled and should be permitted to present evidence in support of their claim on the merits. Inasmuch as there are excess assets available to pay said claim, no other persons would be prejudicied by allowing movants to present their claim to the Court on the merits."

On August 13, 1973, claimant's motion was heard. Plaintiff appeared by her attorney, receiver appeared in person and by attorney, and claimant appeared by copartner Don Paxson and by attorney.

Don R. Paxson identified himself as a certified public accountant and as a partner in Paxson & Richel whose senior part-

ner was his father, C. L. Paxson. He verified and filed the proof of claim on behalf of Paxson & Richel. It was stipulated that such claim was timely filed. Mr. Paxson received the receiver's notice of the court's order setting the deadline for filing proofs of claims and advising that such claims would be for hearing on March 21, 1972. He prepared claimant's proof of claim, followed a federal bankruptcy form because no form had been provided, pursuant to the notice. In response to correspondence from the receiver, Mr. Paxson, in April 1972, answered the receiver and enclosed claimant's unpaid statement for work performed for defendant corporation. He also asked that the statement be treated as a formal claim for payment and asked that any prescribed forms for verification of claims be forwarded to claimant; and, in August, 1972, he inquired again about claimant's past due account, advised of his understanding from Mr. Newhart, counsel and officer of defendant corporation, that sufficient assets existed to cover payment of the account, and asked to be advised of the status of the claim and the likelihood of its settlement in full. Mr. Paxson wrote the receiver again in October, 1972, to inquire about the status of claimant's bill. The receiver consulted with his attorney and advised Mr. Paxson that he should file a claim.

Mr. Paxson acknowledged that his firm received all the notices sent by the receiver, and that no one appeared at the hearing on proofs of claims or at the hearing on receiver's accounting.

Mr. Paxson identified Exhibit 6 as a copy of a letter he received from Mr. Newhart as attorney for defendant corporation addressed to the receiver. The letter bore date of April 21, 1973, and concerned both the Flury-Hinderks and Paxson & Richel claims which were for hearing April 24, 1973. By the letter Mr. Newhart advised the receiver, with copies to receiver's attorney, the clerk of the circuit court

where the hearing was to be conducted, and the claimants:

"The Flury-Hinderks Co. insurance premium claim should certainly be allowed without protest or delay. These people have furnished insurance coverage to the corporation over a long period of time and they will have the policies and itemization needed to substantiate their claim. They have extended credit for these insurance premiums for some time.

"The same is true of Paxson and Richel, Certified Public Accountants. They have rendered accounting and tax service for many years to the corporation. They have likewise extended credit. Their account should be paid without protest or further delay.

"I do not have any information on these accounts other than my memory, personal knowledge of the incurrence of the services, and verification of their merit. I forwarded to you the billings on the same in the early stages of the receivership."

Claimant offered this letter, conceding it to be hearsay, not for the truth of what it stated but as evidence of the knowledge of the claim of the receiver against whom claimant's motion was filed. The court sustained receiver's objection to the exhibit on the ground of hearsay.

The court denied claimant's motion to set aside its previous orders and to hear the claim on its merits. Subsequent alternative motions to amend the court's order to grant a hearing on the merits of their claim or for a new trial on the motion to set aside were also denied.

Appellant contends that the trial court's action should be reversed in order to accord claimant a hearing on the merits of its claim, or, at the least, to accord a hearing to receive and consider all evidence on whether the claim should be heard on the merits. As grounds for this contention, appellant asserts:

A. It was error to deny the claim, when timely filed, without fixing and giving notice of a time for concluding the hearing of all claims.

B. It was error to deny the claim, when claimant received no notice that receiver was disallowing the claim although submitted under oath.

C. It was error and an abuse of discretion to ignore evidence at the hearing of August 3, 1973, tending to establish a reasonable excuse for not appearing at the hearing of April 24, 1973; that claimants pursued their claim diligently; that receiver and the court had knowledge that the corporation through its attorney conceded the validity of the claim, yet neither the receiver nor the court notified claimant of its disallowance although receiver had notified creditors of all other actions taken by the court subsequent to the court's requiring creditors to file proofs of claims.

Respondent receiver contends that he gave timely notice of the hearing on proofs of claims; that notice to one partner was notice to the entire partnership claimant, and that there was no error in disallowance of subject claim because claimant offered no evidence by which to sustain the burden of proving its claim.

Respondent plaintiff joins with respondent receiver and contends that the court did not abuse its discretion by its action, and that this court should not disturb the trial court's judgment unless it was clearly an abuse of discretion or clearly erroneous.

This case is for review upon both the law and the evidence with due regard to be given to the opportunity of the trial court to have judged the credibility of the witnesses. Rule 73.01, subd. 3(a), (b), V.A.M.R. There are no questions of credibility or resolution of conflicts in the evidence upon which deference would be accorded the trial court. The only evidence question is the admissibility of Exhibit 6, the copy of the letter from the attorney for the debtor corporation to the receiver.

■ The only objection to the admissibility of Exhibit 6 was that it was hearsay. There was no question of its authenticity and genuineness, and it purports to bear on issues immediately confronting the receiver addressee and which had been the subject of communication between the addressee, the copy addressees, and the writer for some time. In such circumstances, it should have been admitted as evidence of the receiver's and the court's knowledge of the existence of the claim in question and its probable validity and merit insofar as the debtor's concession of its merit would bear on its allowance. Crawford v. Metropolitan Life Ins. Co., 167 S.W.2d 915 (Mo. App.1943).

The court disallowed subject claim "for the reason that they have been notified as to two dates when proceedings would be taken up in this case, and the court has not heard from anyone on their behalf." The court referred to the same reason in refusing to reconsider on claimant's motion to set aside the disallowance.

Appellant concedes that it received notice of the court's order to all creditors of defendant corporation to file verified proofs of claim on or before February 28, 1973, or to be barred from filing any such claim; and it is conceded by all parties that claimant filed the subject claim prior to that date. Appellant concedes also that it received notice from the receiver that he would call all duly filed proofs of claim for hearing on March 21, 1973, and the notice from the receiver of the court's order of March 21, 1973, continuing such hearing to April 24, 1973, and that it made no appearance on either date.

■ Nevertheless, appellant devotes a portion of its argument to its attempt to show an excuse for its failure to heed the receiver's notices due to an internal problem of correspondence created by notices to partner C. L. Paxson not coming to the attention of Don Paxson, the partner who did the work for defendant corporation on behalf of claimant. That portion of appellant's argument is not persuasive because it, alone, does not overcome the general rule that knowledge of one partner in relation to the business of a firm is imputed to the other partners if the receiving partner was acting within the scope of the partnership business. Buder v. Denver Nat. Bank, 151 F.2d 520, 526 (8th Cir. 1945).

Appellant, however, raises other issues which bear on whether the trial court abused its discretion in this case.

Section 351.500, RSMo 1969, V.A.M.S., provides: "In proceedings to liquidate the assets and business of a corporation the court may require all creditors of the corporation to file with the clerk of the court or with the receiver proofs under oath of their respective claims. If the court requires the filing of claims it shall fix a date, which shall be not less than four months from the date of the date of the order, as the last day for the filing of claims, and shall prescribe the notice that shall be given to creditors and claimants of the date so fixed. Prior to the date so fixed, the court may extend the time for the filing of claims. Creditors and claimants failing to file proofs of claim on or before the date so fixed may be barred, by order of the court, from participating in the distribution of the assets of the corporation."

There is no question that appellant filed its claim in compliance with the statute and with the court's order entered pursuant to the statute. The statute, however, makes no provision with respect to allowance or disallowance proceedings, in which case the common law prevails.

The nature of receivership proceedings was stated in State ex rel. Bromschwig v. Hartman, 221 Mo.App. 215, 300 S.W. 1054, 1059[7–13] (1928): "When a court of equity has appointed a receiver and placed him in charge of the assets of a corporation, the receiver thereafter holds such assets subject to the order of the court. The assets are in the custody of the court, and

may be lawfully paid out or disbursed only upon the order of the court. Claims of creditors may be established by separate suits against the receiver, or may be presented for allowance to the court in the action in which the receiver was appointed, if the court shall so direct. When the court in which the receivership is pending calls upon creditors to come in and prove their claims, this is a substitute for separate suits on such claims. In the absence of any special statutory practice on the subject, it is no part of the receiver's duty to report claims to the court for allowance, but such duty devolves upon the creditors themselves, and the time within which any and all claims may be presented is to be determined by the court. Where, on application of the receiver, an order is granted for the publication of notice to creditors, and notice is duly published, claims not exhibited within the time specified in the notice are precluded from sharing in the assets, where there has been in the meantime a final distribution of the assets in the hands of the receiver based upon claims proven. If a reasonable excuse for delaying to make an earlier claim is shown, the court may in its discretion permit a creditor to come in and prove his claim at any time before actual distribution, or even after partial payments, if there is a surplus in the hands of the receiver, so as not to interfere with payments already made."

With respect to whether a court of equity could bar claims by delimiting the time for presentation, State ex rel. Hyde v. Falkenhainer, 309 Mo. 381, 274 S.W. 722, 726[2] (banc 1925), stated: "The reasonable rule seems to be that if the claim is provable (not merely contingent), then if proven within the date fixed for concluding the hearing of claims (which date should be a reasonable time before distribution), then the claim should be allowed."

■ It is to be noted also that in addition to the duty to file a timely claim, the claimant must support it with evidence. State v. Falkenhainer, supra; Holland Banking Co. v. Continental Nat. Bank, 9 F.Supp. 988, 989 (W.D.Mo.1934); Strubinger v. Mid-Union Indemnity Co., 352 S.W. 2d 397 (Mo.App.1961).

Consistent with the foregoing principles is the statement in 19 C.J.S. Corporations § 1544, p. 1289: "Claims presented in an insolvency proceeding against a corporation should be passed on by the receiver and allowed or disallowed and notice * * * should be given to claimants who then have the opportunity of having this determination reviewed by the court * * *. Only claims of creditors which are properly proved and are enforceable may be allowed; and on the other hand, if a claim is provable it should be allowed if proved within the date fixed for concluding the hearing of claims."

■ Within the meaning of the foregoing, the evidence shows the following pertinent matters:

1. As early as April, 1972, claimant, pursuant to a letter from the receiver, advised receiver by mail of its unpaid statement for work performed for defendant corporation, requested that such letter be treated as a formal claim for payment, and requested it be furnished with prescribed forms for verification of the claim.

2. In August, 1972, C. L. Paxson and the receiver discussed the claim at receiver's home.

3. Subject claim was timely filed and was verified on oath of the partner who had done most of the work.

4. There was no order fixing a date for concluding the hearing of claims, and nothing about the notices calling claims for hearing suggests that any date there mentioned would be a final or concluding date for hearing of claims.

5. The notice which called proofs of claim "for hearing" would not necessarily have impressed claimant with the need to support its verified claim with "evidence"

other than the verified claim itself and Mr. Newhart's concession of its merit.

6. The receiver and the court had knowledge of subject claim by way of Exhibit 6 and it showed also that the debtor's attorney considered it a valid claim against the assets of his corporation. This knowledge is contrary to the finding that "the court has not heard from anyone on their behalf," and to counsels' statements that there was nothing by way of support for subject claim.

7. Subject claim does not appear to have been questioned prior to the hearing.

8. Claimant was not notified of the disallowance of its claim until June 27, 1973, and it filed its motion to set aside the disallowance and accounting within two days and prior to any final judgment by which other parties acquired rights or distribution was made.

9. Surplus funds remain in the hands of the receiver in an amount considerably in excess of subject claim from which the claim could be paid. Consequently, no prejudice could result to other claimants. Such surplus funds would, under the proposed accounting and distribution, go to satisfy a judgment creditor of shareholders as opposed to creditors of defendant corporation.

In these circumstances, all parties were advised that claimant had a timely filed and provable claim. To deny it in the first instance upon claimant's failure to appear at a scheduled hearing was one thing. To refuse claimant a hearing on the merits of the claim at a subsequent time when no final date for hearing of claims had been set, when no other claimants could be prejudiced and prior to distribution of surplus funds, was a failure of the court to exercise its discretion amounting to an abuse of its discretion.

There is an analogy in these proceedings to those in which a default judgment in favor of a plaintiff or a dismissal with prejudice of a plaintiff's petition is set aside. The grounds for such action are: (1) existence of a meritorious defense or claim; (2) reasonable diligence or excuse for default or failure appears; and (3) no substantial injury to other parties resulting from delay caused by reopening the proceedings. Lester v. Dyer, 518 S.W.2d 213, 216[1] (Mo.App.1974).

In this case the evidence indicates that subject claim is meritorious, i. e., it was verified, it was conceded by the corporation's attorney to be meritorious and there is no indication to the contrary. The evidence shows claimant to have been diligent in making all parties aware of the claim throughout the dissolution proceeding and by timely filing it and that no injury would result to any other claimant. With its verification, the concession of its merit, the lack of an order or notice of a final date for hearing such claims, the lack of notice of disallowance of the claim, and a timely request to reopen the hearing on claims, a reasonable excuse for failure to appear at the hearing is properly inferred.

The trial judge was no doubt motivated by a desire to resolve this litigation at an early date, and he should have received a better effort from this claimant. He is to be commended for his efforts to accomplish that purpose. Nevertheless, the cause must be remanded to the end that subject claim, timely filed, may be heard and determined on its merits. Casserly v. Bench, 521 S.W.2d 395 (Mo. banc 1975).

The judgment is reversed and the cause is remanded for a hearing of subject claim on its merits, and for any other proceedings not inconsistent with this opinion.

All concur.